## John T. Stevenson

### v.

## City of Falls Church

Record No. 911221

April 17, 1992

Present: Carrico, C.J., Compton, Stephenson, Whiting, Lacy, and Hassell, JJ., and Poff, Senior Justice

J. Ronald Lynch (Whitestone, Brent, Young & Merril, on briefs), for appellant.
David R. Lasso, City Attorney (B. R. Hicks, on brief), for appellee.

JUSTICE WHITING delivered the opinion of the Court.

The sole issue in this appeal is whether the evidence is sufficient to support the trial court's finding that the accused was operating a motor vehicle while intoxicated.

Falls Church (the city) adopted an ordinance effective July 1, 1989, which incorporated by reference into the city code the provisions of Code §§ 18.2-266, *et seq.* and 46.1-168, *et seq.* that pertained to "driving motor vehicles while intoxicated."[1]

The parties stipulated that:

1. On July 6, 1989, in the early morning hours, Officer B.R. Darden of the Falls Church City Police Department found the Defendant [John T. Stevenson] inside of a motor vehicle asleep, behind the steering wheel. The vehicle was located on a 7-11 parking lot in the City of Falls Church. The key was in the ignition but it was not recalled whether the key was in the "on" or "off" position. The engine of the motor vehicle, and all of its other mechanical and electrical parts were off.

2. It was not known how the motor vehicle arrived at the parking lot, and how long it had been at that location.

---

[1] On July 1, 1989, Code § 18.2-266 provided (and still provides) in pertinent part that "[i]t shall be unlawful for any person to drive or *operate any* motor vehicle . . . while such person is under the influence of any . . . self-administered intoxicant." (Emphasis added.)

On July 1, 1989, Code § 46.1-1(17), in pertinent part, defined a vehicle "[o]perator" or "driver" as "[e]very person who either (i) drives or is in actual physical control of a motor vehicle upon a highway." By an amendment effective October 1, 1989, that definition was recodified as a part of the definitions in Code § 46.2-100. Acts 1989, c. 727.

3. Officer Darden awoke the Defendant, at which time it became apparent to her that he was intoxicated, and Defendant stipulated that he was intoxicated at that time. She then placed him under arrest and subsequently obtained a warrant [that charged Stevenson with a violation of the City of Falls Church drunk driving ordinance].

Upon his conviction of drunk driving by the general district court, Stevenson appealed to the Circuit Court of Arlington County. In a bench trial, that court also found him guilty, and Stevenson appealed to the Court of Appeals. In an unpublished opinion, the Court of Appeals affirmed the circuit court, holding that Stevenson was the "operator" of his car within the proscription of Code § 18.2-266 because he was "in actual physical control of the motor vehicle."

Initially, we review several well-established legal principles before considering Stevenson's argument that the proof is insufficient to establish his "actual physical control of a motor vehicle" within the meaning of Code § 46.1-1(17). Those principles are:

Penal statutes are to be strictly construed against the Commonwealth and in favor of the citizen's liberty. . . . Such statutes may not be extended by implication; they must be applied to cases clearly described by the language used. . . . And the accused is entitled to the benefit of any reasonable doubt about the construction of a criminal statute.

*Martin* v. *Commonwealth,* 224 Va. 298, 300-301, 295 S.E.2d 890, 892 (1982) (citations omitted). And, those principles apply to our constructions of penal ordinances. *See Rollins* v. *Town of Gordonsville*, 216 Va. 25, 26, 215 S.E.2d 637, 638 (1975).

On brief, the city argues that this Court has not adopted "a bright line test that requires some part of the car to be in motion — either the key to be turned 'on', wires being connected, or some other action like putting the car in gear." Expanding upon this, the city contends that:

It does not matter whether the motor is running or idle nor whether the drunk is in the front seat or the back seat. His potentiality for harm is lessened but not obviated by a silent motor or a back seat position, provided, of course, he is the one in control of the car. It takes only a flick of the wrist to

start the motor or engage the gears, and it requires only a
moment of time to get under the wheel from the back seat. A
drunk in control of the motor vehicle has such a propensity
to cause harm that the statute intended to make it criminal
for him to be in a position to do so.

Thus, according to the city, if an intoxicated defendant is in the
car with the means of starting the engine, or of operating its
mechanical or electrical equipment, he is "in actual physical con-
trol of a vehicle" and, therefore, is its operator within the meaning
of the Falls Church drunk driving ordinance. In essence, the city
invites us to apply a part of the definitional language of Code
§ 46.1-1(17) disassociated from the ordinary meaning of the
words "operator" or "driver." We decline the invitation.

Instead, we construe the words "operator" and "driver" in the
statute according to their ordinary meaning, given the context in
which they were used. *Grant* v. *Commonwealth*, 223 Va. 680, 684,
292 S.E.2d 348, 350 (1982). An "operator" is defined in pertinent
part as "one that produces a physical effect or engages himself in
the mechanical aspect of any process or activity: as . . . one that
uses or operates a machine or device . . . sometimes used to dis-
tinguish the user of fixed devices from the driver of automotive
devices." Webster's Third New International Dictionary 1581
(1986). A "driver" is defined in pertinent part as "one that drives
something: as . . . a person in *actual physical control of a vehicle
(as an automobile).*" *Id.* at 692, 292 S.E.2d at 348 (emphasis
added).

■ And, we have applied the ordinary meaning of these two
words in our constructions of Code §§ 18.2-266 and 46.1-1(17).
In three cases, we have held that a vehicle occupant was in "ac-
tual physical control" of the vehicle within the meaning of Code
§ 46.1-1(17) when he was seated behind the steering wheel *and*
performed certain acts. *Williams* v. *City of Petersburg*, 216 Va.
297, 301, 217 S.E.2d 893, 896 (1975) (ran engine and made "mo-
tion" to gearshift); *Nicolls* v. *Commonwealth*, 212 Va. 257, 258,
184 S.E.2d 9, 10 (1971) (activated headlights and heater and ran
engine with car in high gear but lack of fluid in transmission
made car inoperable); *Gallagher* v. *Commonwealth*, 205 Va. 666,
670, 139 S.E.2d 37, 38 (1964) (accelerated engine with car in
gear although car immobile because stuck in ditch).[2]

---

[2] *Lyons* v. *Petersburg*, 221 Va. 10, 266 S.E.2d 880 (1980), has little to do with the issue
in this case. Here, we are concerned with the issue of the *extent* of the accused's activity

In *Williams*, quoting *Gallagher*, we pointed out that "operating" a vehicle within the proscription of the drunk driving statute

> not only includes the process of moving the vehicle from one place to another, but also includes *starting the engine, or manipulating the mechanical or electrical equipment of the vehicle without actually putting the car in motion. It means engaging the machinery of the vehicle which alone, or in sequence, will activate the motive power of the vehicle.*

*Id.* at 300, 217 S.E.2d at 896 (emphasis added) (citation omitted). As we said in affirming the *Williams* conviction:

> From all of these facts [the motor of the car was running, upon being aroused, the defendant made a "motion" to the gearshift], the trial court could properly find beyond a reasonable doubt that the defendant was in actual physical control of the vehicle and that he had engaged the machinery of the vehicle which alone, or in sequence, would have activated its motive power. Therefore, the defendant was "operating" the vehicle within the meaning of the ordinance.

*Id.* at 301, 217 S.E.2d at 896.

■ We adhere to our holding in *Williams* and apply it here. It was "not recalled whether the key was in the 'on' or 'off' position." And, on appeal, we must assume that the key was in the off position.

■ Because the presence of the key in the ignition switch in the off position did not engage the mechanical or electrical equipment of Stevenson's car, Stevenson did not "drive or operate" the car within the meaning of the statutes that were incorporated by reference in the Falls Church ordinance.

Accordingly, we will reverse the judgment of the Court of Appeals affirming the conviction, dismiss the warrant, and enter final judgment for the defendant.

*Reversed and final judgment.*

necessary to constitute "actual physical control" of a vehicle. *Lyons* deals with the sufficiency of the circumstantial evidence necessary to establish that an accused had driven his vehicle into a parked car.

JUSTICE COMPTON, with whom CHIEF JUSTICE CARRICO and JUSTICE HASSELL join, dissenting.

In my opinion, when a drunk is sitting in the driver's seat of a parked, operable motor vehicle, and he is alone and has inserted the key in the ignition switch, he is in "actual physical control" of the vehicle, within the settled meaning of that statutory term as articulated in every case previously decided by this Court.

The Court has rendered opinions in five prior cases dealing with this subject in the last 28 years: *Gallagher* v. *Commonwealth*, 205 Va. 666, 139 S.E.2d 37 (1964) (drunk sitting at steering wheel of car stuck in ditch with motor running); *Nicolls* v. *Commonwealth*, 212 Va. 257, 184 S.E.2d 9 (1971) (drunk "slumped" over steering wheel of inoperable vehicle with motor running); *Williams* v. *Petersburg & Commonwealth*, 216 Va. 297, 217 S.E.2d 893 (1975) (drunk "slumped" over steering wheel of vehicle stopped in parking lot with motor running); *Lyons* v. *Petersburg*, 221 Va. 10, 266 S.E.2d 880 (1980) (drunk found behind steering wheel of wrecked vehicle which had collided with another); and *Overbee* v. *Commonwealth*, 227 Va. 238, 315 S.E.2d 242 (1984) (conviction reversed when defendant found standing in front of vehicle with engine not running and key not in ignition). In each of those cases, the Court employed the statutory definition (not a dictionary definition) of the terms "operator" and "driver," found in former Code § 46.1-1(17) (1986 Repl. Vol.), now Code § 46.2-100. The Court was construing the word "operate" as used in the drunk-driving statute, Code § 18.2-266, which makes it unlawful for a person to "drive or operate" a motor vehicle while under the influence of alcohol.

As pertinent, the statutory words "operator" and "driver" mean "every person who . . . drives or is in actual physical control of a motor vehicle on a highway." Code § 46.2-100. The Court has followed the view that the term "operate" is not limited to the movement of the vehicle but includes a defendant who is "in actual physical control" of the vehicle. *Nicolls*, 212 Va. at 259, 184 S.E.2d at 11.

The reason for this liberal interpretation of the words "operate," "operator," and "operating" is obvious. A motor vehicle is recognized in the law as a dangerous instrumentality when in the control of a sober person; in the control of a drunk, the dangerous instrumentality becomes lethal. Therefore, until now, the Court

has interpreted the drunk-driving statute in a way that kept drunks from behind the steering wheels of motor vehicles, even when the drunk needed to "sleep it off." *See Williams*, 216 Va. at 299, 217 S.E.2d at 895.

Ordinary experience tells us that one in a drunken stupor in the driver's seat of a vehicle is likely to arouse abruptly, engage the motive power of the vehicle, and roar away imperiling the lives of innocent citizens. This sequence of events easily can occur where, as here, a drunk is sitting behind the steering wheel of a motor vehicle alone, with the key already in the ignition. From a mechanical standpoint, the vehicle is "capable of being immediately placed in motion to become a menace to the public, and to its drunken operator." *Id.* at 301, 217 S.E.2d at 896.

The majority labors to distinguish this case from *Williams* by saying that Stevenson's ignition key may have been in the "off" position. Ergo, the majority says, the defendant was not in actual physical control of the vehicle, and he did not "operate" the car.

That is a distinction which makes no difference whatever. A motor vehicle can be started as readily with an ignition key in the "off" position as it can when the key is in the "on" position.

Consequently, I would affirm the conviction, and the judgment of the Court of Appeals.